# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENSBARGAINS.NET, LLC,, | CASE NO. 06cv1445 BTM |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| XPBARGAINS.COM, ET AL., | |
| Defendants. | |
| AND RELATED COUNTERCLAIMS. | |

Defendants have filed a motion for summary judgment on Plaintiffs' Second Amended Complaint for copyright infringement.  For the reasons discussed below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.  BACKGROUND

Benjamin Chui ("Chui") is the owner of BensBargains.net LLC, which operates the internet website www.Bensbargains.net.  Chui posts daily lists of deals that he has chosen as the best deals.  (Chui Decl., ¶ 2.)  The deals pertain to a variety of products, including electronics, software, computer hardware, lawn furniture, sporting goods, bicycles and cameras.  (Id.)  Chui compiles his list by searching the Internet and by learning of deals from

vendors with whom Chui has a relationship. (Chui Decl., ¶ 4.) Chui typically posts only one product from any given category of products. (Id.) When users click a deal on the BensBargains website, the users are directed to the vendor's website. (Chui Decl, ¶ 3.) If the users make a purchase, BensBargains typically receives a commission from the vendor. (Id.)

Chui claims: "My compilations of postings are unique in that they are eclectic, often going from a deal on a ream of paper to a Mont Banc pen, to a mountain bike. Each seemingly random compilation, keeps the user engaged by offering disparate products priced from very small amounts to very high amounts, but intentionally not in any monetary order, and offers the user a bargain on something at almost every given price point." (Chui Decl., ¶ 5.) Chui explains that his eclectic grouping of deals tends to create an excitement among users and create an experience similar to a "flea market" or estate sale. (Id.)

In late 2002, Chui suspected that Defendants were copying significant portions of his compilations onto their website, www.xpbargains.com. Chui began registering his daily compilations of deals. Between February 27, 2004 and October 31, 2005, Chui registered 29 compilations. (Defs.' Lodgements 4-30.)

According to Chui, BensBargains would publish its compilation at 11:00 p.m., or so, and Defendants would typically begin copying these compilations around 6:00 a.m. the following morning. (Chui Decl., ¶ 7.) Because Defendants would copy starting from the top of BensBargain's list, their list would be in the inverse order. (Id.) Additional deals added by Chui during a given day would be copied within a matter of hours to XPBargains. (Id.)

On or about October 9, 2005, Chui began placing intentional misspellings in individual deals in some of the compilations by inserting his name, "Ben," into the text. On October 9, 2005, 7 instances of the misspellings were reflected on XPBargains. On October 16, 2005, 6 instances appeared on XPBargains. (Pl.'s Ex. C.)

In his Second Amended Complaint, Plaintiff asserts a single claim of copyright infringement. Defendants have asserted Counterclaims against Plaintiff and Mr. Chui. Mr. Chui has filed state counterclaims against all Defendants.

## II. DISCUSSION

Defendants move for summary judgment against Plaintiff on Plaintiff's claim for copyright infringement.  Defendants argue that (1) Plaintiff's compilations are not sufficiently original to qualify for copyright protection; and (2) Even if Plaintiff's compilations are protected by copyright laws, Plaintiff cannot show substantial similarity between its compilations and Defendants'.  As discussed below, Plaintiff's compilation consists of an original selection of deals and, arguably, an original arrangement of deals.  However, there are only a few instances where there is sufficient similarity between the protected features of Plaintiff's compilation and Defendants' corresponding compilation to raise a triable issue as to copyright infringement.

1. Originality

The Copyright Act of 1976 defines compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  17 U.S.C. § 101.  Under the statute, three distinct elements must be met for a work to qualify as a copyrightable compilation: (1) the collection and assembly of pre-existing material, facts, or data; (2) the selection, coordination, or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination, or arrangement, of an original work of authorship.  Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 357 (1991).

The originality requirement is not a stringent one.  As explained by the Supreme Court:

> A compiler may settle upon a selection or arrangement that others have used; novelty is not required.  Originality requires only that the author make the selection or arrangement independently . . . and that it display some minimal level of creativity.  Presumably, the vast majority of compilations will pass this test, but not all will.

Id. at 359.

In Feist, the Court held that the selection, coordination and arrangement of the

06cv1445 BTM

1  plaintiff's white pages did not entail the slightest bit of creativity.  Id. at 362.  The selection

2  consisted of basic information - name, town, and telephone number - of each person who

3  applied to it for telephone service.  The arrangement was an alphabetical listing by surname.

4      In contrast, in Key Publications, Inc. v. Chinatown Today Publishing, 945 F.2d 509 (2d

5  Cir. 1991), the Second Circuit held that the plaintiff's directory for New York City's Chinese-

6  American community was entitled to copyright protection because of plaintiff's original

7  selection and arrangement.  Plaintiff had to select from numerous businesses, in New York

8  and elsewhere, those that would be of greatest interest to her audience.  "Selection implies

9  the exercise of judgment in choosing which facts from a given body of data to include in a

10  compilation."  Id. at 513.

11      The plaintiff in Key Publications arranged the businesses in categories, some of which

12  were of particular interest to the Chinese-American community and not common to yellow

13  pages.  The Second Circuit explained that "arrangement" refers to "the ordering or grouping

14  of data into lists or categories that go beyond the mere mechanical grouping of data as such,

15  for example, the alphabetical, chronological, or sequential listings of data."  Id. (quoting

16  Copyright Office, Guidelines for Registration of Fact-Based Compilations 1 (Rev. Oct. 11,

17  1989)).

18      In terms of selection, this case is more like Key Publications than Feist.  Chui's

19  compilation is not an inclusive list of all deals for all products.  Chui uses his individual

20  judgment to select among a multitude of deals for various products.  There is nothing

21  automatic or obvious about his selections.  Therefore Chui's compilations are original and

22  are entitled to copyright protection.

23      Plaintiff arrangement is also arguably subject to copyright protection.  According to

24  Chui, he arranges his list so that it is not in any particular order to help create a flea-market

25  type atmosphere.  His arrangement is not a mechanical grouping, but, rather, requires him

26  to exercise his own judgment.  See Lipton v. Nature Co., 71 F.3d 464 (2d Cir. 1995)

27  (arrangement was original where plaintiff arranged terms of venery in a sequence that was

28  based on his own aesthetic judgment).

2. <u>Substantial Similarity</u>

Defendants argue that even if Plaintiff's selection and arrangement are sufficiently original to warrant copyright protection, there is no substantial similarity between the protected elements of Plaintiff's compilations and Defendants' compilations. Although the Court agrees with Defendants for the most part, there is a triable issue as to whether Defendants infringed Plaintiffs' copyright in connection with Copyright Registration 6-394-131 (compilation published on 10/16/05), Copyright Registration 6-394-132 (compilation published on 10/18/05), and Copyright Registration 6-394-125 (compilation published on 10/20/05).

a. <u>Governing Law</u>

To establish copyright infringement, the plaintiff must prove ownership of the work in question, access to the work by the defendant, and substantial similarity of both the general ideas and the expression of those ideas. <u>Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.</u>, 562 F.2d 1157, 1164 (9th Cir. 1977).

Plaintiff contends that it is not required to show substantial similarity because it can prove that actual copying occurred. Plaintiff cites to the "inverse ratio rule," which provides that when access is proven, the required degree of similarity is lessened. <u>See, e.g.</u>, <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 485 (9th Cir. 2000). However, Plaintiff confuses the issues of copying *as a factual matter* and actionable copying. The inverse ratio rule applies to the issue of copying as a factual matter only:

> Proof of access can logically aid in showing copying as a factual matter – added to the probative similarity that exists between two works, it can bolster the proof that one was in fact derived from the other. But access logically exerts no impact on copying as a legal matter; no matter how steeped in plaintiff's work defendant may have been, if the resulting product is non-actionable as a matter of law, then the absence of substantial similarity that must underlie every successful claim still dooms the infringement suit.

<u>Nimmer on Copyright</u>, § 13.03[D] (2007). Thus, Plaintiff must prove the existence of a triable issue of material fact with respect to substantial similarity, regardless of how strong its

1  evidence is that Defendants *in fact* copied from Chui's compilations.[1]

2       Proof of substantial similarity is satisfied by a two-part test.  Under the extrinsic test,

3  the focus is on whether the two works share a similarity of ideas and expression as

4  measured by external, objective criteria.  Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir.

5  2004).  This analysis often requires analytical dissection of a work and expert testimony.

6  Three Boys, 212 F.3d at 485.   Once the extrinsic test is satisfied, the factfinder applies the

7  intrinsic test.  The intrinsic test is subjective and asks whether the ordinary, reasonable

8  person would find the "total concept and feel of the works" to be substantially similar.  Id.

9  For purposes of summary judgment only the extrinsic test is relevant.  Swirsky, 376 F.3d at

10  845.

11       In applying the extrinsic test, it is important to distinguish between the protected and

12  unprotected elements of the plaintiff's work because the requirement is one of substantial

13  similarity to the *protected* elements of the copyrighted work.  Swirsky, 376 F.3d at 845. In the

14  context of a factual compilation, only the compiler's original selection and/or arrangement

15  may be protected – the underlying facts may be copied at will.  Feist, 499 U.S. at 350.

16       The less copyright protection a work receives, the more similarity is required to meet

17  the "substantial similarity" standard.  As explained by Nimmer: "It would seem to follow

18  analytically that more similarity is required when less protectible matter is at issue.  Thus, if

19  substantial similarity is the normal measure required to demonstrate infringement,

20  'supersubstantial' similarity must pertain when dealing with 'thin' works."  Nimmer on

21  Copyright, § 13.03[A].  In keeping with this principle, the Ninth Circuit has held that copyright

22  infringement of compilations consisting largely of uncopyrightable elements should not be

23  found in the absence of "bodily appropriation of expression, " or "unauthorized use of

24  substantially the entire item."  Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 205

25

26       [1] Plaintiff does have probative evidence that Defendants *in fact* copied from Plaintiff's
    website.  This evidence includes the copying of the intentional insertion of "Ben" in some of
27  Plaintiff's entries, the overlap of a significant portion of deals, the timing of Defendants'
    postings, the inverse order of certain deals on Defendants' website, and the sharp decrease
28  in the amount of overlapping deals after October 19, 2005 (when Plaintiff sent Defendants
    a cease and desist letter). (Chui Decl., 7, 9, 12; Pl.'s Exs. B, D.)

1  (9th Cir. 1989).

2

3              b.  Analysis

4        Defendants contend that the amount of overlap in deals between their compilations

5  and Plaintiffs is insufficient to constitute copyright infringement.  Defendants also argue that

6  the arrangements of their compilations differ substantially from the arrangements of Plaintiff's

7  compilations.  The  Court  agrees  that  there  is  no  substantial  similarity  between  the

8  arrangements of Defendants' and Plaintiff's compilations, but finds that there is sufficient

9  similarity  between  the  selection  of  deals  in  a  few  of  the  copyrighted  compilations  and

10  Defendants' corresponding compilations to create a triable issue as to infringement.

11

12              i.  Selection

13        Looking at the percentage of BensBargains' deals that also appear on XPBargains,

14  the numbers range from 23% to a high of 81%, with an average of 48%.  (Pl.'s Ex. A.)  The

15  percentages skew a little higher if one excludes from the calculations deals Plaintiff offered

16  from  vendors  who  did  not  have  affiliate  relationships  with  third  parties  or  only  had  a

17  relationship with BensBargains (Plaintiff refers to these deals as "exclusives").  Excluding

18  exclusives, the percentage of BensBargains deals appearing on XPBargains ranges from

19  24% to 87%, with an average of 53%.

20        The Court finds that the appropriate percentage to consider is the percentage of *all*

21  of BensBargains' deals that also appear on XPBargains.  Cases have found infringement

22  where the alleged infringer has copied substantially all of a discrete portion of the protected

23  work.  See, e.g., Eckes v. Card Prices Update, 736 F.2d 859 (2d Cir. 1984) (holding that

24  there was copyright infringement where the defendant's listing of premium baseball cards

25  contained  substantially  the  same  5,000  cards  that  plaintiff's  guide  (containing  18,000

26  baseball cards in all) had listed as premium cards).  Here, however, the "exclusive" listings

27  are not truly a discrete portion of Plaintiff's work.  It does not appear that there is separate

28  selection criteria for the purported category of "exclusive" listings.  Although Defendants had

a financial motive for not including the exclusives on their website, the exclusives were part of Plaintiff's selection and should be considered in determining whether Defendants have infringed that aspect of Plaintiff's compilations.

Although the Court's primary consideration is whether a substantial portion of Plaintiff's selection was copied by Defendants, the Court also considers how much of Defendants' selection was original.  In the context of factual compilations, the defendant's addition of original material is relevant in determining whether the defendant's selection is itself original.  See, e.g., Kregos v. Associated Press, 937 F.2d 700 (2d Cir. 1990) (expressing doubt whether AP's 1986 form, which contained six of the nine items included on Kregos's form *and included four additional items*, infringed Kregos's form); Ross Brovins & Oehmke, P.C. v. Lexis Nexis Group, 462 F.3d 478 (6th Cir. 2006) (holding that there was no infringement where Lexis chose not to include various forms used by LawMode in its compilation and added at least 35 forms of its own selection); Lipton v. Nature Company, 71 F.3d 464 (2d Cir. 1995) (holding that there was infringement where defendant's compilation included 72 out of 77 animal terms compiled by plaintiff and only included one additional item).

Caselaw does not provide specific percentages of overlap beyond which infringement is presumed because the amount of copying that rises to the level of substantial similarity varies depending on the circumstances of the case – e.g., the size of the universe of facts from which selections can be made and how comprehensive the compilations are.   For example, in Schoolhouse, Inc. v. Anderson, 275 F.3d 726 (8th Cir. 2002), Schoolhouse published a magazine which included tables of information on area public and private schools.  Anderson, a real estate agent, organized and listed information on local schools in his website.  Approximately 74% of the topics in Schoolhouse's tables were included on Anderson's website.  However, the Eight Circuit found there was no substantial similarity in selection, explaining:

> A great deal of the overlap between Schoolhouse's table and Anderson's website is the result of Schoolhouse's comprehensive approach to reporting data.  For example, the topics in the "Athletic" section of Schoolhouse's 1996 public schools table comprise all of the seventeen sports that are generally

available in local high schools.  For purposes of compiling such a table, there is nothing original about simply selecting all of the generally available sports. Similarly, nearly all of the topics selected by Schoolhouse, such as school district population, number of pupils, pupil/staff ratio, and particular classes offered, convey facts that parents obviously consider important in selecting a school for their children.

Id. at 730.

This case is distinguishable from Schoolhouse because the universe of deals from which Plaintiff and Defendants can select is vast, and Plaintiff's compilation is not a comprehensive listing of deals.  Under the facts of this case, Defendants' copying of 74% of Plaintiff's deals, without significant additional selections, would be sufficient to raise a triable issue as to infringement.

However, the Court finds that there is insufficient similarity to survive summary judgment where either the percentage of Plaintiff's deals that were copied *or* the percentage of Defendants' deals that were derived from Plaintiff's website is less than 70%.  As explained in Kregos: "Kregos can obtain a copyright by displaying the requisite creativity in his selection of statistics.  But if someone else displays the requisite creativity by making a selection that differs in more than a trivial degree, Kregos cannot complain."  Kregos, 937 F.2d at 710.

There are three compilations where the percentage of Plaintiff's deals that have been copied and the percentage of Defendants' deals copied from Plaintiff's website exceed 70%: Copyright Registration 6-394-131 (compilation published on 10/16/05), Copyright Registration 6-394-132 (compilation published on 10/18/05), and Copyright Registration 6-394-125 (compilation published on 10/20/05).  Summary judgment is denied as to these compilations, but is granted as to the other compilations.

ii.  Arrangement

Plaintiff contends that the arrangements of Defendants' compilations was substantially similar to Plaintiff's arrangements.  According to Plaintiff, Defendants' compilations had the same arrangements as Plaintiff's corresponding compilations but in inverse order.

9

1   Although there are portions of Defendants' compilations that include some of Plaintiff's

2   deals in inverse order, Defendants' own deals are often interspersed throughout these

3   portions, obliterating any sense of inverse arrangement that might have otherwise existed.

4   (Pl.'s Ex. B).   In addition, Defendants' inclusion of additional deals throughout each

5   compilation as a whole creates an original arrangement. Furthermore, Defendants'

6   compilations frequently contain overlapping deals that do not fall into the inverse order

7   pattern - whether because the deals were copied later in the day, Defendants found the deal

8   on their own, or for some other reason.

9   A visual comparison of Plaintiff's compilations and Defendants' corresponding

10   compilations confirms the Court's conclusion that there is no substantial similarity of

11   arrangement between any of Plaintiff's copyrighted compilations and Defendants'

12   compilations.

13

14   **III.  CONCLUSION**

15   For the reasons discussed above, Defendant's Motion for Summary Judgment is

16   **GRANTED IN PART** and **DENIED IN PART**.  Summary judgment is **DENIED** as to Copyright

17   Registration 6-394-131, Copyright Registration 6-394-132, and Copyright Registration 6-394-

18   125.  Summary judgment is **GRANTED** as to the remaining compilations.

19   **IT IS SO ORDERED.**

20

21   DATED:  August 16, 2007

22

23   Honorable Barry Ted Moskowitz
    United States District Judge

24

25

26

27

28

10                                                                    06cv1445 BTM